# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Rafford Broadnax,

      Plaintiff

v.

Uber Technologies, Inc., et al.,

      Defendants

Case No. 2:25-cv-00113-JAD-MDC

**Order Denying Motion to Remand, Granting Motion to Compel Arbitration, and Staying Case Pending Arbitration**

ECF Nos. 5, 6, 9, 18, 23, 34, 35, 45, 49, 50

Rafford Broadnax is a former Uber driver who characterizes himself as "the epitome of diligence and compliance in the rideshare industry, having meticulously adhered to all state and local regulations required" to do his job.[1]  Broadnax was "deactivated" as a driver last summer, purportedly "due to passenger reports," but Uber refused Broadnax's requests for clarification, preventing him "from defending himself against the accusation."[2]  So Broadnax went on the offensive and seeks to hold Uber Technologies, Inc. accountable not just for mistreating him, but for "misclassifying employees to evade financial responsibilities, unjustly enriching themselves at the expense of their drivers, and retaliating against those who dare to challenge their unethical practices."[3]  He filed this suit in Nevada state court against Uber and its

---

[1] ECF No. 1-4 at 2 (complaint).

[2] *Id*. at 4.

[3] *Id*. at 2–3.

subsidiaries[4] for "employee misclassification," unjust enrichment, breach of contract, negligence, estoppel, employment discrimination, retaliation, and misrepresentation.[5]

The Uber entities removed the case to federal court, and Broadnax moves to remand it back to state court, noting that he asserts only state-law claims.[6]  Relying on a comprehensive arbitration clause in Broadnax's Platform Access Agreement, the Uber entities move to compel arbitration.[7]  I deny the motion to remand because this case finds jurisdiction not based on federal claims but based on the diversity of the parties.  And because the Uber entities have met their burden to show that Broadnax entered into a binding agreement to arbitrate his claims, I grant the motion to compel arbitration, stay this case pending the completion of those proceedings, and deny all other motions.

## Analysis

**A.**  **Remand is not available because jurisdiction over this case is based on diversity of the parties, not federal claims.**

Broadnax asks this court to remand this case back to state court.  He notes that his claims do "not reference any United States Codes, Federal Statutes, or the Constitution of

---

[4] Although Broadnax also sued various Uber officers, directors, or managers, *see* ECF No. 1-4, he voluntarily dismissed his claims against them, *see* ECF No. 40, leaving Uber Technologies, Inc.; Uber USA, LLC; and Rasier, LLC (collectively, "the Uber entities") as the only defendants.

[5] *See generally* ECF No. 1-4.

[6] ECF No. 5.

[7] ECF No. 6.

the United States."[8]  Thus, he theorizes, "no federal question exists," and this case was improperly removed.[9]

Pleading a claim based on a federal question is just one way that a case can be removed from state court to federal court.  A second way is to bring an action with a value of more than $75,000 and with parties who are citizens of different states.[10]  It's this second type of subject-matter jurisdiction—diversity jurisdiction—on which the defendants in this case rely and which gave them the right to remove this case from state court.  As the Uber entities explain in their notice of removal, "this court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a), which encompasses 'actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different States," Broadnax is a citizen of Nevada, each of the Uber entities is a citizen of Delaware and California, and Broadnax expressly alleges in his complaint that he seeks millions of dollars in restitution and damages.[11]  So this case was properly removed based on diversity jurisdiction.

Broadnax's suggestion that the Uber entities' removal was an improper "snap removal" misunderstands that concept.  A snap removal happens when multiple defendants are sued—some of whom are citizens of the forum state, and some of whom

---

[8] ECF No. 5 at 2.

[9] *Id*. at 7.

[10] 28 U.S.C. § 1332.

[11] ECF No. 1 at 3–4 (cleaned up).

are citizens of other states—and a non-forum defendant removes the case before any

defendant gets served.[12]  The Uber entities' removal here was not a "snap removal"

because they removed after being served with process.  Plus, there appears to be no

forum defendant in this case because the Uber entities are citizens of Delaware and

California, and the plaintiff states in the motion for default judgment that he filed in state

court that "The Individual Defendants that are included in the Complaint reside outside

the State of Nevada."[13]  So this wasn't a snap removal.

      The final premise on which Broadnax's remand request relies—that only the

Nevada state court can decide issues related to Nevada law or cases in which Nevada law

governs—is simply wrong.  Federal courts are empowered to decide issues of state law

and do so all the time.  When a case is pending in federal court based on diversity

jurisdiction like this one, the federal court is empowered to apply state law.  The U.S.

Supreme Court articulated this rule in *Erie R. Co. v. Tompkins* in 1938.[14]  "Under the

*Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal

procedural law."[15]  So Broadnax's assertions that "[o]nly State Courts can execute and

enforce State law"[16] or that "State Statutes are only enforceable by State jurisdictional

---

[12] *See, e.g., Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316, 318–19 (D. Mass. 2013) (quoting 28 U.S.C. § 1441(b) (2002)).

[13] ECF No. 1-5 at 53.

[14] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[15] *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996).

[16] ECF No. 5 at 6, ¶ 13.

courts"[17] are incorrect and thus not a basis to remand this case back to state court.  So I deny the motion to remand in its entirety.

## B.    The court grants the Uber entities' motion to compel arbitration and stays this case pending the completion of that proceeding.

Broadnax entered into a contract with the Uber entities through his Uber Driver App, which he alleges in his complaint was "[a] valid contract."[18]  That contract, known as the Platform Access Agreement, contains an arbitration clause that requires all "disputes . . . arising out of or related to" Broadnax's use of the app; his service as a driver; his "contractual relationship with" the Uber entities "or the termination of that relationship"; "the nature of [his] relationship with" the Uber entities; compensation; "retaliation" or "discrimination"; and "all other federal, state[,] or local statutory, common law, and legal claims (including without limitation, torts) arising out of or relating to [Broadnax's] relationship with" the Uber entities "to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial."[19]  The Uber entities move to compel arbitration under this provision.[20]  Broadnax opposes the motion, arguing that he "never physically or electronically signed" the agreement or received a signed copy of it.[21]  He then suggests in a separate filing that

---

[17] ECF No. 14 at 6.

[18] ECF No. 1-4 at 9, ¶ 43.

[19] ECF No. 6-2 at 30–31, ¶ 13.1(b).

[20] ECF No. 6.

[21] ECF No. 8.  Broadnax also "requests that the Judge review the Arbitration Clause to make a determination if the clause is Unconscionable." *Id*. at 2, ¶ 6.  But he doesn't

1  contracts of employment like this one are excluded from the Federal Arbitration Act

2  (FAA) under the Supreme Court's holding in *New Prime Inc. v. Oliveira*.[22]

3        **1.    *The Federal Arbitration Act requires federal courts to rigorously***

           ***enforce a valid agreement to arbitrate when the claims are governed***

4          ***by it.***

5        The FAA states that "[a] written provision in any . . . contract evidencing a

6  transaction involving commerce to settle by arbitration a controversy" arising out of the

7  contract or transaction "shall be valid, irrevocable, and enforceable save upon grounds as

8  exist at law or in equity for the revocation of any contract."[23]  It permits any party

9  "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

10  written agreement for arbitration" to petition any federal district court for an order

11  compelling arbitration in the manner provided for in the arbitration agreement.[24]  The

12  FAA "establishes a federal policy favoring arbitration, requiring that [courts] rigorously

13  enforce agreements to arbitrate"[25] and provides that if a "contract contains an arbitration

14

15

16

---

17  argue that the clause is unconscionable or suggest any reason why it could be so deemed,

    so I decline to address this undeveloped point.  Plus, this is an issue reserved to the

18  arbitrator, *see infra* at p. 15.

    [22] ECF No. 14 at 5.

19  [23] 9 U.S.C. § 2.  Nevada law similarly favors arbitration.  *See State ex rel. Masto v.*

    *Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 199 P.3d 828, 832 (Nev. 2009) ("As a

20  matter of public policy, Nevada courts encourage arbitration and liberally construe

    arbitration clauses in favor of granting arbitration.").

21  [24] 9 U.S.C. § 4.

22  [25] *Shearson/Am. Exp. Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (cleaned up)).

23                                    6

clause, there is a presumption of arbitrability."[26]  "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"[27]  When presented with a motion to compel arbitration, the court has two gateway issues: (1) whether there is a valid agreement to arbitrate and, if so, (2) whether the claims are governed by the arbitration agreement.[28]  But if "the parties clearly and unmistakably" delegate to the arbitrator issues regarding the scope and application of the arbitration clause, the court may leave the second gateway issue for the arbitrator to decide.[29]

## 2.    There is no genuine dispute that Broadnax is bound by a valid agreement that contains an arbitration provision.

Broadnax's first "objection" to the request to compel arbitration is to suggest that the Platform Access Agreement, which contains the arbitration provision, is invalid because he never signed it.[30]  It is well settled that the question of whether the parties

[26] *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (internal quotation marks omitted).

[27] *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean v. Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

[28] *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

[29] *AT&T Techs, Inc.*, 475 U.S. at 649.

[30] ECF No. 8 at ¶ 4.  He asserts this same objection in ¶ 7 of his "Objection to Declaration of Deborah Soh in Support of Motion to Compel Arbitration."  *See* ECF No. 10.  This second-filed objection is procedurally inappropriate because this district's Local Rule (L.R.) 7-2 gives a litigant the right to file just one response to a motion to compel.  This second "objection" is largely a repeat of the first, but to the extent that Broadnax raises

7

formed an agreement to arbitrate "is generally for courts to decide."[31]  The standard to be applied for this issue is the same as the summary-judgment standard.[32]  "[W]hen considering a motion to compel arbitration [that] is opposed on the ground that no agreement to arbitrate has been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."[33]  "Only when there is no genuine dispute of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."[34]  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[35]

---

new points in it, they do not create genuine issues of fact regarding the validity of the Platform Access Agreement.

[31] *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296 (2010).

[32] *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (noting that, under the FAA's procedural framework, the district court must "rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure" when determining questions regarding the making of the arbitration agreement).

[33] *Id.*

[34] *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1142 (9th Cir. 1991) (finding that, "to require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the first principle of arbitration that a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (cleaned up)).

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

        ***a.     The record shows without genuine dispute that Broadnax assented to the Platform Access Agreement and its arbitration provision.***

Broadnax has not created a "genuine" dispute over whether the agreement is invalid because it lacks his signature.  The only evidence about whether or not Broadnax assented to the agreement comes from the Uber entities.  They provide the declaration of Uber paralegal Deborah Soh, who explains that, in order for an Uber driver to gain access to connect with riders on the app, the driver "must first enter into" various agreements, including the Platform Access Agreement.[36]  This is accomplished inside the Uber Driver App, using a smartphone or tablet.[37]  These agreements are accessed by links within that app, and to advance through the agreements, the driver "must click 'Yes, I agree' to the applicable agreement.  After clicking 'Yes, I agree,'" the driver is prompted a second time to "[c]onfirm that you have reviewed all the documents and agree to all the new contracts."[38]

The Uber entities provided sample screenshots of this process.[39]  The end of the Platform Access Agreement contains the sentence, "By clicking 'Yes, I agree,' I expressly acknowledge that I have read, understood, and considered the consequences of this Agreement, that I agree to be bound by the terms of this Agreement, and that I am

---

[36] ECF No. 6-2 at 4, ¶¶ 7–8 (Soh declaration).

[37] *Id*. at 4, ¶ 8.

[38] *Id*.

[39] *Id*. at 9–11.

legally competent to enter into this Agreement with Uber."[40]  After accepting each

agreement, the driver is given "the opportunity to opt out of the arbitration provision in

each specific agreement. . . ."[41]  When a driver agrees to a document using this process,

"an electronic record is generated showing that they agreed to the documents.  The record

includes a date and time stamp establishing when each agreement was accepted."[42]  The

Uber entities provided an electronic business record reflecting that Broadnax completed

this process to set up his driver's app account, and that he "assented to" the Platform

Access Agreement on February 4, 2024.[43]  Soh declares that thousands of Uber drivers

opted out of the arbitration provisions in the various contracts, but Uber "does not have a

record of" Broadnax opting out of the arbitration provision in the Platform Access

Agreement.[44]

       Broadnax attacks this evidence with his unsworn statement that he "never

physically or electronically signed" the agreement or its arbitration clause.[45]  And as the

---

[40] *Id*. at 43.

[41] *Id*. at 5, ¶ 10.

[42] *Id*. at 5, ¶ 11.

[43] *Id*. at 5, ¶¶ 14–15; *id.* at 15.

[44] *Id*. at 6, ¶¶ 17–18.

[45] ECF No. 8 at 2, ¶ 4.  While Broadnax makes the unsworn statement that this document is "NOT Original, NOT Genuine and possibly Doctored," ECF No. 10 at 2, he offers no factual basis for these claims, except to say that this document makes it erroneously appear that he started with Uber on February 4, 2024, when he actually started the previous November.  *See id*. at ¶¶ 2–3.  But this isn't a genuine dispute because Soh acknowledges in her declaration that Broadnax "first created an account to use the Uber platform on or about October 23, 2023," ECF No. 8 at 5, ¶ 13, and Broadnax offers nothing to factually dispute his ultimate acceptance of the Platform Access Agreement on February 4, 2024.

Uber entities point out in their briefing, Broadnax alleges in the breach-of-contract claim in his complaint that "[a] valid contract existed" between himself and the Uber entities and that "[t]he terms of the contract were established through the Uber Driver App, which Plaintiff used to accept" rides and customers—"completing 1,241 trips."[46]  So even when construed in the light most favorable to Broadnax, there is simply nothing in this record to show that he did not assent to the terms of the arbitration agreement.  I thus find that there is no genuine dispute that Broadnax entered into the Platform Access Agreement and its arbitration agreement, which is a valid and enforceable agreement.

### b.    A signature is not required to make a valid contract—just a manifestation of assent.

To the extent that Broadnax is suggesting that his repeatedly clicked assent isn't a signature, and a signature is what's needed to enforce the arbitration agreement against him, the law does not support that notion.  For a valid contract to exist in Nevada, "[a]ll parties to a contract must assent to its terms," and "assent is determined under an objective standard applied to the outward manifestations or expressions of the parties."[47]

---

[46] ECF No. 1-4 at 9, ¶ 43–45.

[47] *Alter v. Resort Props. of Am.*, 130 Nev. 1148, 2014 WL 2466282 at *2 (Nev., May 30, 2014) (quoting *ASP Props. Grp. v. Fard, Inc*., 35 Cal. Rptr. 3d 343, 351 (Ct. App. 2005)). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022).  The Platform Access Agreement "is governed by the applicable law of the state" in which the driver resided when he accepted the agreement.  ECF No. 8 at 4, § 12.7.  For Broadnax, that's Nevada.  *See* ECF No. 6-2 at 13 (Nevada driver's license).

Such assent can be demonstrated digitally.[48]  As the Ninth Circuit Court of Appeals explained in *Berman v. Freedom Financial Network, LLC*, "if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests h[is] acceptance of those terms, an enforceable agreement can be formed."[49]  "The most straightforward application of these principles in the online world involves so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed."[50]  "[C]ourts have routinely found clickwrap agreements enforceable."[51]

This is specifically true for the Uber driver agreements—and under facts identical to those in this case.  For example, in *O'Callaghan v. Uber Corp. of California*, a district judge in the Southern District of New York granted Uber's motion to compel arbitration, rejecting the driver's bald claim that the arbitration provision was invalid because "he never assented to" it.[52]  It found that "the only way through which O'Callaghan could have continued to access the Uber App was to click 'YES, I AGREE' each time the operative agreements were updated," and "O'Callaghan's evidence shows that he continued to drive for Uber throughout 2014 and 2015," so "[h]is bare assertion that he

---

[48] *See, e.g., Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870, 872 (Nev. 1970) ("Although an agreement to arbitrate future controversies must be in writing, a signature is not required."); *accord Tallman v. Eighth Jud. Dist. Ct.*, 359 P.3d 113, 119 (Nev. 2015).

[49] *Berman*, 30 F.4th at 856.

[50] *Id.*

[51] *Id.*

[52] *O'Callaghan v. Uber Corp. of Cal.*, 2018 WL 3302179 at *7 (S.D.N.Y. July 5, 2018).

never assented to the arbitration provision yet continued to have access to the Uber App is without any factual basis."[53]    A judge in the Eastern District of New York similarly held in *Kai Peng v. Uber Technologies, Inc.* that the Uber drivers' process of clicking the "YES, I AGREE" button and not opting out of the arbitration agreement demonstrated their assent to arbitration.[54]    Just as in *O'Callaghan* and *Kai Peng*, the Uber entities have shown here that the driver assented to the arbitration agreement in his contract documents.    Broadnax's physical or electronic signature was not required.

### c.    The interstate-transportation-worker exemption does not apply.

Broadnax's final challenge to arbitrability is found in his reply in support of his motion to remand,[55] in which he suggests that an exemption to the FAA, recognized in the Supreme Court's opinion in *New Prime Inc. v. Oliveira*,[56] exempts this case from the Act's reach.[57]    In *New Prime*, the High Court held that it is the job of the district court, not the arbitrator, to decide before compelling arbitration whether a contract containing an arbitration clause qualifies as one of the "contracts of employment" for a class of

---

[53] *Id.* (cleaned up).

[54] *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 49 (E.D.N.Y. 2017).  *See also Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1060 (D. Nev. 2019) (finding that Uber driver signed electronic arbitration agreement through the Uber app, noting that he was required to sign into the app with a unique username and password and agree to the arbitration contract before using the app).

[55] Because Broadnax is proceeding pro se, I liberally construe his filings and more generously address arguments that should have been raised only in his response to the motion to compel arbitration.

[56] *New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019).

[57] ECF No. 14 at 5.

transportation "workers engaged in . . . interstate commerce" that is exempt from the FAA.[58]  But the Ninth Circuit in *Capriole v. Uber Techs., Inc.* held that "Uber drivers do not perform an integral role in a chain of interstate transportation.  Uber drivers do not fall within the Section 1 exemption to the FAA because they are not 'engaged in interstate commerce' within the meaning of that Section."[59]  The First, Third, and Seventh Circuits have reached the same conclusion.[60]  So while I could disregard Broadnax's *New Prime* argument because it was raised for the first time in his reply brief in support of his motion to remand,[61] I instead reject this argument on its merits because binding Ninth Circuit law holds that the *New Prime* decision and the interstate-transportation-worker exemption are no barrier to compelling arbitration of Broadnax's claims.

---

[58] *New Prime*, 586 U.S. at 111.

[59] *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863–64, 866–67 (9th Cir. 2021).  The arbitration clause here also states "you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act.  If notwithstanding the foregoing, the Federal Arbitration Act does not apply to this Arbitration Provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply."  ECF No. 8 at 5, § 13.1(a).  Additionally, the declaration of Deborah Soh states, and Broadnax does not contest, that "[a]ll of Plaintiff's trips completed using Uber's Driver App occurred in Las Vegas, Nevada," and were thus not interstate or foreign.  *See* ECF No. 6-2 at 6, ¶ 19.

[60] *See Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021); *Immediato v. Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022); *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 560 (3d Cir. 2023); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802–03 (7th Cir. 2020).

[61] *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

1
2

### 3.  *The agreement clearly and unmistakably delegates questions of arbitrability to the arbitrator.*

3    While the district court's second task in deciding whether to compel arbitration is

4    determining whether the agreement encompasses the dispute at issue, that task can be

5    reserved to the arbitrator if the parties' arbitration agreement "clearly and unmistakably"

6    delegates that question to the arbitrator.[62]  Such is the case here.  As the Uber entities

7    point out, the arbitration agreement delegates to the arbitrator "**disputes arising out of or**

8    **relating to interpretation or application of this Arbitration Provision, including the**

9    formation, **scope**, enforceability, waiver, **applicability**, revocability, or validity of this

10   Arbitration Provision or any portion of this Arbitration Provision."[63]  The Ninth Circuit

11   found this verbatim language to "clearly and unmistakably indicate[] the parties' intent

12   for the arbitrators to decide the threshold question of arbitrability" in *Mohamed v. Uber*

13   *Technologies, Inc.* when affirming the district court's order compelling arbitration of

14   claims brought by former Uber drivers.[64]  Because Broadnax and the Uber entities clearly

15   and unmistakably delegated the question of arbitrability to the arbitrator, this court is

16   required to enforce that agreement and let the arbitrator determine the arbitrability of

17   Broadnax's claims.[65]

18
19
20

[62] *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *AT&T Techs.*, 475 U.S. at 649; *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016).

[63] ECF No. 8 at 5, § 13.1(b) (emphasis added and cleaned up).

[64] *Mohamed*, 848 F.3d at 1209.

[65] *Id.* at 1209.

**C.    This action is stayed pending the completion of the arbitration, and all other motions are denied without prejudice to the parties' ability to bring them before the arbitrator.**

When a district court grants a motion to compel arbitration, the FAA states that the court "shall" stay the case pending arbitration if any party so moves.[66]  Last year in *Smith v. Spizzirri*, the Supreme Court held that dismissal is not an option—a stay is what the FAA compels.[67]  Because I grant the motion to compel arbitration under §3 of the FAA and the Uber entities have asked for a stay, I grant that motion and stay this case pending completion of the arbitration proceeding.  And because issues like discovery and amendment of claims are now within the arbitrator's power to decide, I overrule all remaining objections and deny all other pending motions without prejudice to the parties' ability to reassert them as appropriate in the arbitration proceeding.

## Conclusion

IT IS THEREFORE ORDERED THAT:

- Plaintiff Rafford Broadnax's motion to remand this court back to state court **[ECF No. 5] is DENIED**;

- Defendants Uber Technologies, Inc., Uber USA, LLC, and Rasier, LLC's motion to compel arbitration **[ECF No. 6] is GRANTED**, and **this case is STAYED** pending completion of the arbitration proceeding in accordance with § 13 of the

---

[66] 9 U.S.C. § 3.

[67] *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

Raiser Platform Access Agreement updated as of January 1, 2022, in this record at ECF No. 6-2. **The Clerk of Court is directed to ADMINISTRATIVELY CLOSE this case.**

- All other motions **[ECF Nos. 9, 18, 23, 34, 35, 45, 50] are DENIED** and objections **[ECF No. 49] are OVERRULED** without prejudice to their refiling as appropriate in the arbitration proceeding.

_____
United States District Judge
May 18, 2025

17